F. METZGER v. C. F. WENDLER AND OTHERS.

1. A party has a right to amend his pleadings at any stage of the case, before he has announced ready for trial.

2. In civil causes, the district judge is not bound to charge the jury at all, unless requested so to do by one of the parties.

ERROR from Kendall. Tried below before the Hon. M. B. Walker.

On the fourteenth day of September, 1868, Metzger brought this suit against C. F. Wendler, Henry Wendler and Carl Adam, on two promissory notes executed by them to him, at San Antonio, on the twenty-sixth of October, 1861, for $510 each, one due at twelve, and the

other at twenty-four months after date. The petition admitted payments on the first note, of $65, September 24, 1865, and of $60, March 1, 1866.

At the Fall Term, 1868, the defendants filed a general denial, except as to payments, and on account of them made an indistinct reclamation of "the amount to be due defendants, less the amount of plaintiff's claim in lawful money, if any he have." The defendant Adam also pleaded that he was only a surety on the notes, and the plaintiff admitted this by replication. At a subsequent day of the same term, the defendants amended, and pleaded a tender at maturity of the amount due upon the notes, which, however, was struck out, on plaintiff's motion, because filed without leave of court.

The defendants then moved for a continuance for want of the testimony of one Lehmberg, of Llano county, whose testimony they swore to be material to their defense. The motion was overruled, but the term of court was adjourned, and the cause thus stood continued by operation of law.

At the ensuing Spring Term, 1869, the defendants amended, and set up the defense that the notes were contracted to be paid in Confederate money. This answer was filed on the first of June, and the cause went to the jury the next day. The plaintiff moved the court to strike out this answer, on the ground that it came too late, the cause having been announced ready for trial at the preceding term. But this motion was overruled, and the plaintiff excepted.

The trial was had on the second of June, 1869. The plaintiff read the notes sued on, and there rested his case.

The defendants introduced William Nickel, who testified that he was present in October, 1861, when the

plaintiff and the Wendlers talked over their settlement of the grocery business which they, as partners, had conducted at the Leon Springs, between San Antonio and Bœrne; that plaintiff Metzger stated that the Wendlers had bought out his interest in the business, and were to pay for it in Confederate money; that Metzger and the Wendlers had not had any other business transaction since that one, or witness would have known of it. On cross-examination, the witness said he did not see the notes signed, and had never seen them at all until this trial.

F. Schwarz, witness for the defendants, testified to the same effect as Nickel.

E. Altgelt, for defendants, testified that Confederate money came into circulation in this section of country about the first or second week of October, 1861.

The plaintiff, in rebuttal, proved by two witnesses that Confederate money came into general use in or about December, 1861. A third witness thought it came into circulation about August, September or October, 1861; and a fourth put the time as "the closing months of 1861."

The court charged the jury to find whether the notes were payable in Confederate money; and if so, the contract was illegal, and they would find for the defendants. The jury found that the notes were payable in such money, and returned their verdict for the defendants. Judgment was rendered for the defendants, in accordance with the verdict.

Plaintiff moved for a new trial, because the court erred in allowing the last amended answer to be filed; and because the verdict was contrary to the law and the evidence. The motion was overruled, and plaintiff gave notice of appeal. The appeal, however, was not perfected, and the cause is brought up by writ of error,

24—xxxv

and the errors assigned are the allowance of the last amended answer, setting up the Confederate money defense, the charge of the court, and the refusal of a new trial.

By the case next reported in this volume, it will be seen that the litigation in the court below did not stop at this stage; but that the plaintiff, after the close of the term, filed a bill for a new trial, and being cast in that proceeding also, brings it also to this court by writ of error.

His counsel filed an able brief, comprising both cases.

*W. B. Leigh*, for the plaintiff in error.—1. Touching the first error assigned, we would refer the court to the record, which shows such a multiplicity of pleas, amendments, etc., on the part of the defendants, that the thought is irrepressible that they were purposely confused, so that a chaotic mass of pleas might hide their weakness, and in certain contingencies, facilitate procrastination and dilatory and vexatious proceedings. The cause of action, a suit on plain promissory notes, admitted of a plain answer. At a previous term of the court, the cause was ready for trial as far as the pleadings were concerned, and would have been disposed of had the sheriff been able to get a jury. There must be a limit to the right of amendment—a period in the progress of the cause beyond which it should not be allowed to amend—especially when the proposed amendment, instead of simplifying, multiplies the issues, and has a tendency to mislead and to mystify. The statute, Article 54, Paschal's Digest, gives the court directory power over amendments; and we think that power should have been exercised by the court below when the amendment was presented. (See remarks on pleadings in Mims v. Mitchell, 448, 449, Vol. 1, Texas Reports.)

2. The court erred in its charge to the jury, in omitting instructions informing the jury in some way that the law presumes that the promissory notes sued on were given for a valuable and legal consideration. Although the statute does not make it obligatory upon the judge to charge the jury, yet whenever he does so, the whole of the law applicable to the case should be embraced in the charge. In San Antonio v. Lewis, 9 Texas R., 71, this court says: "The court must instruct the jury as to the legal effect of written evidence." Had the jury in the case at bar been informed that a legal presumption of legality of the notes sued on had to be overcome by defendant's testimony, they would in all probability have found a different verdict. In Chandler v. Fulton, 10 Texas R., 21, this court reversed the judgment on the ground of misdirection of the court, although the facts sustained the verdict.

In Graham & Waterman on New Trials, Vol. 3, page 768, it is said: " As the court is the expounder and interpreter of the law, and the jury looks to and relies upon the court for information in that behalf, it is evident that an erroneous exposition of the law on a point material to the issue will be fatal. Therefore, though the verdict of the jury in the court below be in accordance with the opinion of the appellate court upon the evidence, yet, if the former gave erroneous instructions to the jury as to the law, so that it is not entirely certain that justice had been done, the latter will grant a new trial."

In the same work, Vol. 1, p. 267, we see it stated that the rule emphatically applies to actions arising *ex contractu.*

In the same volume, page 273, it is said, that if, in the absence of proper instructions, the jury err, the verdict will be set aside.

In the case at bar, it must be borne in mind that the jurors of Kendall county are Germans, but little used to court proceedings, and by the absence of proper instructions easily led to the belief that, no matter how light and unsatisfactory the witnesses Schwarz's and Nickel's testimony be, they must find according to the drift of it.

That promissory notes import a valid consideration, and that illegal actions are not presumed, are propositions requiring no authorities.

Aside from omissions, we deem the charge of the court erroneous, because not in consonance with the principles enunciated by the Supreme Court of the United States in the cause of Thorington v. Smith, decided December Term, A. D. 1868, and reported in 8th Vol. Wallace Rep., S. C. U. S., p. 1. In the case at bar the parties resided within the so-called Confederate States; the bargain was a sale of property in the usual course of business, and not for the purpose of giving currency to the notes, or otherwise aiding the rebellion.

"Where the charge was incorrect, it is the rule of this court to reverse the judgment." (Mims v. Mitchell, 1 T. R., p. 451.)

Even if the charge as given is the correct law in the abstract, did the evidence warrant the court in giving those instructions? We think not. Not one of the witnesses was present when the promissory notes were made at San Antonio; the bargain spoken of by the witnesses Nickel and Schwarz was made at Leon Springs, eighteen miles from San Antonio, and about a week or ten days before the dates of the notes; the witnesses never saw the notes before the trial, and knew nothing of them.

3. The court below should have granted a new trial,

because the evidence was in itself insufficient to warrant the verdict. It consists of a casual conversation, not even specially addressed to the witnesses, who had no reason to pay any special attention to it, the whole matter being entirely foreign to them, made about the middle of October, A. D. 1861, and testified to June 2, 1869 ; the great war of the rebellion, with all its excitements, having passed between those dates. But even that conversation did not relate to the notes, but to a bargain, of which it is supposed these promissory notes formed a part. Not one of the witnesses knows anything of the promissory notes. Opposed to that is the presumption of legality, the credits, payments made by defendants on the notes after the downfall of Confederate money and Confederate States, admitted by their plea to have been paid in good money, and the testimony of three witnesses that Confederate money was not known in the country in October, 1861.

To taint a contract, fair and legitimate on its face, with treasonable vices, the impeaching evidence must be positive and direct.

The maxim that fraud and wrong are not presumed, applies par excellence to treason.

With these remarks we submit the original cause as it appears by the record, without reference to the proceedings, to obtain a new trial.

*Wheeler & Moore*, for defendants in error.—1. As to the first assignment, the defendants in error are of the opinion, founded upon the authorities referred to, that there is a stage in the pleadings up to which the privilege of amendment does not rest in the discretion of the court ; to amend belongs to the parties as a right, and leave of the court is given as a matter of course. (Connell v. Chandler, 11 Texas, 249 ; Teas v. McDonald, 13 Texas, 349 ; Johnson v. Marshall, 14 Texas, 493.)

When the period in the progress of the cause is attained beyond which it is in the discretion of the court to refuse or allow amendments, as may seem most to accord with the ends of substantial justice and the respective legal rights of the parties, the issue to be determined by that discretion is whether the amendment will operate as a surprise. (Same authorities above referred to.)

If, in order that law and equity may obtain between the parties, the court permits the filing of the amendment, and the features of the amendment are calculated to surprise, the remedy of the adverse party is at hand then, for the court will grant him a continuance for the purpose of giving him time to make his defense. (Turner v. Lambeth, 2 Texas, 371.)

The plaintiff's counsel in the case at bar was not heard to complain of surprise, nor of a "chaotic multiplicity of pleas," nor that the plain patent question raised by the amendment had any tendency either to "mislead or mystify." He asked not even a moment's delay to meet the issue, but earnestly opposed a continuance and urged a trial.

When the court, in its discretion, has granted an amendment, the appellate court will not in general revise. (Austin v. Jordan, 5 Texas, 133, and authorities there cited.)

2. As to the second assignment, with reference to the omission in the charge, the court is respectfully referred to the charge itself. It is believed that every word of that charge is law, and that in it the court has an ample vindication.

And in support of the other part of the charge, in regard to Confederate money being an illegal currency, and the refusal of the law to enforce executory contracts calling for Confederate money, the following au-

thorities are submitted : Smith v. Smith, 30 Texas, 154; Pridgen v. Smith, 31 Texas, 171 ; Goodwin v. McGehee, 31 Texas, 254.

3. As to the third assignment, to-wit, that the court erred in refusing a new trial, it is believed that by reference to the testimony there will be found abundant evidence to support the verdict. It was proved by F. Schwarz and E. Altgelt and A. Staffel, who examined his books, that Confederate money was in general circulation at the time and before the execution of the notes sued on.

Defendants proved by William Nickel that plaintiff and defendants had been engaged together in the grocery or bar room business. That in October, 1861, he was present at the place where the business had been carried on ; that he heard plaintiff say defendants (Wendlers) had bought him (plaintiff) out, and was to pay him in Confederate money.

Defendants proved by Schwarz that plaintiff told him that he had sold out his interest in the grocery or bar room business to defendants, for Confederate money ; that the amount was about eleven hundred dollars in Confederate money.

Both of the witnesses, Nickel and Schwarz, testified that they did not see the notes signed, nor see the notes until produced in court.

Plaintiff's counsel did not introduce any witness to prove to the contrary (with reference to the transaction), but simply intimates that the witnesses testified falsely.

We reply, that these two witnesses, with those by whom they are known, stand above suspicion, and can defy the effect of such insinuations. Had they been disposed to exceed the bounds of truth, they could have sworn they saw the notes executed, and that the notes so executed were the identical ones sued on.

It is not pretended that any other debt ever existed between the parties. Had there ever been any transactions prior to or subsequent to the execution of the notes sued on, whereby a debt was created (since the only question was identification of the transaction), it was within the power of counsel to show these transactions, or some one of them, and thereby weaken the presumption that the conversation heard by the witnesses referred to the debt represented by the notes. When an indebtedness is admitted, and subsequent to the admission a debt is declared upon in suit, and no other indebtedness is shown to exist, it is an equitable and unavoidable legal presumption that the indebtedness so declared upon is the same admitted to be in existence. Such a presumption is raised in the case at bar; and if it were possible to strengthen it, it is so strengthened by the accumulative testimony as to the amount, time (corresponding with the date of the notes), and the absence of other dealings between the parties after the admission (as shown by the testimony). By proof of such circumstances, a conviction as to identity of debt is produced so conclusive as that the most incredulous juror could but believe.

The jury are the exclusive judges of the facts, and when they have exercised their province, the courts will not disturb their decision unless it is manifestly wrong. It has been uniformly held, that where there is evidence simply tending to support the verdict, and not a very great weight of evidence clearly proving the contrary, a new trial will not be granted. (Latham v. Selkirk, 11 Texas, 321 ; Cotton v. Campbell, 3 Texas, 495 ; Carter v. Carter, 5 Texas, 102 ; Howard v. Ray, 25 Texas, 88 ; Adams v. George, 25 Sup. Texas, 374 ; Fowler v. Lewis, 25 Sup. Texas, 380.)

A verdict must clearly be wrong to induce the court

to set it aside. (Perry v. Robinson, 2 Texas, 491 ; Long v. Steiger, 8 Texas, 462 ; Gamage v. Frawick, 19 Texas, 64 ; George v. Lemon, 19 Texas, 152 ; Cummings v. Rice, 19 Texas, 226 ; Oliver v. Chapman, 15 Texas, 410 ; Powell v. Haley, 28 Texas, 53 ; Swinney v. Booth, 28 Texas, 113 ; Stroud v. Springfield, 28 Texas, 651 ; Tuttle v. Turner, 28 Texas, 760 ; Wells v. Barnett, 7 Texas, 587 ; Ables v. Donley, 8 Texas, 336 ; Edrington v. Kiger, 4 Texas, 93.)

OGDEN, J.—This suit was instituted on two promissory notes, executed by the defendants in error to the plaintiff in error in October, 1861. The defense set up in the court below was, that the notes were given for and payable in Confederate money. The cause was submitted to a jury in 1869, and a verdict and judgment were rendered for the defendants. The plaintiff has brought the cause to this court by a writ of error, and assigns the following as errors for the reversal of the judgment :

1. The court erred in allowing the last amended answer.

2. The court erred in its charge to the jury.

3. The court erred in refusing a new trial.

We can discover no force in the first assignment, as the statute, and the oft-repeated decisions of this court, have settled the question that an amendment, in all proper cases, is a privilege of right which either party has until he announces himself ready for trial.

Under his second assignment the plaintiff in error complains, not so much of what the court did charge the jury, as of what he failed to charge. It has frequently been held by this court, that in civil causes the court is not bound to charge the jury at all, unless requested by one of the parties so to do. (Robinson v.

Varnell, 16 Texas, 387.) Should the court fail to charge the jury in regard to any rule or principle of law pertinent to the facts proven, it is the privilege and duty of a party, who would claim the benefit of such instruction, to ask a special charge, and then, on the refusal of the court to give the charge asked, to take his bill of exceptions. In the cause at bar the record shows no charges asked and refused, and no bill of exceptions to the refusal of the court to give any charge whatever. The second assignment is therefore untenable.

Nor are we of the opinion that the court erred in refusing to grant a new trial. We think there was evidence sufficient to warrant the jury in coming to the conclusion that the notes sued on were, by agreement of both plaintiff and defendant, to be paid in Confederate money; and if so, then the verdict of the jury was in accordance with the law and the evidence, and the court did not err in overruling the motion for a new trial.

The judgment of the district court is therefore affirmed.

AFFIRMED.

· EVANS, Presiding Judge, announced that he did not concur in the opinion rendered in this cause.